**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM** |
|---|---|
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>Plaintiffs,<br>v.<br>MISTER GUNS, LLC, THOMAS CARTER II, and BRANDI CARTER,<br>Defendants. | Civil Action No. 2:26-cv-00056-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>Plaintiffs,<br>v.<br>PISTOLCAP LIMITED COMPANY, d/b/a FRISCO GUNS, and MORDEKHAI HARROCH,<br>Defendants. | Civil Action No. 2:26-cv-00053-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>Plaintiffs,<br>v.<br>PROSOURCE FIREARMS, LLC,<br>Defendant. | Civil Action No. 2:26-cv-00055-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br>Plaintiffs,<br>v.<br>SUPERIOR FIREARMS OF TEXAS, LLC,<br>Defendant. | Civil Action No. 2:26-cv-00058-ALM |

**ATRIUS CUSTOMER DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE BRIEFING DEADLINES AND ENTER A COORDINATED SCHEDULE**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 4

A. Plaintiffs Insisted on their Customer-First Strategy .......... 4

B. The ACDs Opposed the PI Without Discovery, and Plaintiffs Declined to Reply .......... 5

C. Plaintiffs' Post-Opposition Proposals Culminated in the Vacatur Motion .......... 5

III. THE COURT SHOULD DENY PLAINTIFFS' MOTION AND SET A HEARING ON PLAINTIFFS' ACD PI MOTION .......... 6

A. Plaintiffs Bear the Burden, and the ACD PI Motion Is Ripe for Resolution .......... 6

B. Plaintiffs' Proposal Sacrifices Fairness Without Producing Efficiency .......... 8

C. Plaintiffs' Strategic Sequencing and Delay Defeat Good Cause .......... 10

D. The Same Asymmetry Would Prejudice the ACDs and Distort Their Record .......... 13

E. The Court Should Set a Prompt, Separate Hearing on the ACD PI Motion .......... 14

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Primerica Holdings, Inc.*,
822 F. Supp. 1099 (D.N.J. 1993) ........ 13

*Banco Mercantil de Norte, S.A. v. Paramo*,
114 F.4th 757 (5th Cir. 2024) ........ 7

*GoNannies, Inc. v. GoAuPair.com, Inc.*,
464 F. Supp. 2d 603 (N.D. Tex. 2006) ........ 12

*Hetzel v. Bethlehem Steel Corp.*,
50 F.3d 360 (5th Cir. 1995) ........ 7

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009) ........ 11

*Hybritech Inc. v. Abbott Lab'ys*,
849 F.2d 1446 (Fed. Cir. 1988) ........ 12

*Landis v. North American Co.*,
299 U.S. 248 (1936) ........ 6

*Monolithic Power Systems, Inc. v. O2 Micro International Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013) ........ 11

*Novosteel SA v. United States*,
284 F.3d 1261 (Fed. Cir. 2002) ........ 8

**Rules**

E.D. Tex. Local Rule CV-7(f) ........ 2, 7

Fed. R. Civ. P. 6(b)(1)(A) ........ 1, 7

## I. INTRODUCTION

Plaintiffs' Motion to Vacate Briefing Deadlines and Enter a Coordinated Schedule, Dkt. 77[1] ("Vacatur Mot."), seeks far more than an adjustment of dates. It seeks a do-over at the Atrius Customer Defendants' substantial expense.

Plaintiffs ask the Court to postpone their already-pending, fully ripe Consolidated Motion for Preliminary Injunction as to the Atrius Customer Defendants ("ACDs"), Dkt. 38 ("ACD PI Motion"), until they complete discovery and full briefing on their later-filed motion against Atrius Development Group Corporation, Inc. and then to hear both motions together. *See Atrius Dev. Grp. Corp. v. ABC IP, LLC*, No. 4:26-cv-00448-ALM, Dkt. 54 (E.D. Tex. Aug. 1, 2026) ("Atrius PI Mot."). That proposal would freeze the ACDs' June 26 opposition while allowing Plaintiffs to develop a different, fuller Atrius record and use it in their ACD reply. Plaintiffs call that efficiency. It is, instead, a one-sided effort to rebuild their affirmative case after reviewing the ACDs' defenses. The Vacatur Motion should be denied for three reasons.

First, the ACD PI Motion is ripe on the record Plaintiffs demanded. When Plaintiffs first filed their demand for a Preliminary Injunction, the ACDs requested that Plaintiffs agree to allow limited discovery, a coordinated briefing schedule, and brief delay to allow the ACDs the ability defend themselves without a "fire drill." Plaintiffs refused, citing catastrophic irreparable harm they suffered precluded the requested delay. Consequently, the ACDs hired lawyers and experts, developed their detailed opposition, and filed it on June 26. Dkt. 65 ("ACD PI Opp.") under "file drill" circumstances and at great expense. Plaintiffs then requested—and the ACDs agreed to—two extensions of three weeks to Reply to the ACDs' Responses (Dkt. 69; MDL Dkt. 27). Then Plaintiffs chose not to file a reply by their July 27 deadline. Their Rule 6 request preserved

[1] Unless otherwise stated, all citations are to the *Mister Guns* record (No. 2:26-cv-00056-ALM).

the Court's discretion to extend the deadline; it did not itself extend it. And Local Rule CV-7(f) confirms that "[t]he court need not wait for the reply or sur-reply before ruling on the motion." Plaintiffs likewise identified no obstacle to a prompt hearing. On July 24, a week before Plaintiffs filed their Atrius PI Motion on August 1, they stated: "[t]he hearing date is up to the Court, but we will be ready for it immediately after sur-replies." Ex. A at 5. Plaintiffs chose to file the preliminary injunction against the ACDs, demanded the ACDs defend themselves at great expense from this preliminary injunction, and now want to act like the request was never filed. Plaintiffs' request for an injunction is fully briefed, ready for disposition and should be resolved.

Second, Plaintiffs' August 1 filings refute their claim that the motions involve "virtually the same evidence"; they reveal a "do-over" that would render much of the ACD's effort moot and require the ACDs to expend more fees and effort responding to Plaintiffs' new allegations. The Atrius PI Motion adds revised technical submissions, three sales configurations, manufacturer- and OEM-based infringement allegations, new witnesses, and ***Atrius-specific*** evidence concerning pricing, finances, collectability, reputation, contractual relations, and three individual counterclaim defendants. Atrius PI Mot. at 13–14, 19–38. Then on July 27, Plaintiffs told this Court that the existing ACD injunction request and their new injunction request against Atrius rest on "virtually the same evidence." Vacatur Mot. at 1. Five days later, however, Plaintiffs said they require discovery from Atrius. No. 4:26-cv-00448-ALM, Dkt. 56 at 3 (E.D. Tex. Aug. 1, 2026) ("Atrius Disc. Mot."). If the evidence is the same, no delay is needed; if it is not, no efficiency is gained. The asserted overlap is Plaintiffs' central premise for postponing the ACD PI motion. Either way, no good cause exists to postpone the ACD PI Motion.

Third, Plaintiffs' own sequencing shows that there is no urgency to Plaintiffs' injunctive request and explains the requested delay. The alleged federal bar on Plaintiffs' patent enforcement

lifted in **May 2025**—the same month the Atrius FRS entered the market—and the ’247 and ’784 Patents were then available to assert. *E.g.*, ACD PI Opp. at 9–10. Plaintiffs knew Atrius was the manufacturer, sued it on contract claims in **July 2025**, and sought contractual injunctive relief. *See* Atrius PI Mot. at 3. But after that dispute went to arbitration, Plaintiffs chose to pursue patent claims against many of Atrius’s customers—not Atrius. They maintained that deliberate strategy even after Atrius filed declaratory-judgment actions on **February 19 and May 26, 2026**. Several months later, Plaintiffs finally asserted patent counterclaims against Atrius on **July 31, 2026,** only after receiving the ACDs’ opposition and one day before filing the Atrius PI Motion. Plaintiffs now argue that arbitration—concerning an alleged breach of contract—and transfer disputes explain their preferred sequencing, but neither prevented them from suing Atrius directly for infringement in mid-2025, answering Atrius’s declaratory judgment complaint and asserting counterclaims, filing a timely ACD reply, or preparing for a prompt ACD hearing. Plaintiffs’ change in strategy does not establish good cause to suspend the motion they chose to file first; it demonstrates that there is no urgency to Plaintiffs’ preliminary injunction requests, which they now seek to delay further.

A preliminary-injunction motion is not a dress rehearsal. Plaintiffs should not be permitted to seek emergency relief against downstream retailers, require them to expend significant resources to defend themselves, disclose their defenses on a compressed schedule, study those defenses, then be allowed to pivot to the manufacturer for a broader record, and, meanwhile, prevent the customers from obtaining a prompt ruling, thereby prolonging the cloud of uncertainty hanging over their small businesses. Coordination should eliminate duplication—not give the movant a second opening brief.

The Court should deny the Vacatur Motion, recognize that Plaintiffs elected not to file a

reply under the existing schedule, treat the ACD PI Motion as submitted on the existing record, and set a prompt, separate evidentiary hearing on the ACD PI Motion. Alternatively, any reply should be due within five business days, confined to matters responsive to the ACDs' opposition and the existing ACD record, and prohibited from relying on Atrius' discovery or materially new affirmative evidence absent leave and good cause. The ACDs should receive a sur-reply within fourteen days—the period the parties negotiated, and the Court ordered on July 23. Ex. B at 6; MDL Dkt. 27. A separate hearing should follow at the Court's earliest convenience.

Alternatively, if Plaintiffs choose to withdraw the ACD PI motion in favor of pursuing injunctive relief against Atrius, Plaintiffs should be ordered to pay the ACDs' reasonable attorney's fees and costs spent in responding to the motion Plaintiffs now seek to abandon.

## II. BACKGROUND

### A. Plaintiffs Insisted on their Customer-First Strategy

The Atrius FRS entered the market on May 16, 2025—when, by Plaintiffs' account, the alleged federal bar on patent enforcement had just lifted. Dkt. 65-14 at 1; Atrius PI Mot. at 33. Plaintiffs knew Atrius was the manufacturer, and the '247 and '784 Patents were available to assert. Yet on July 1, 2025, they sued Atrius and others in Florida on contractual theories—not patent infringement—and sought a temporary restraining order and preliminary injunction. Atrius PI Mot. at 33–34. The court compelled arbitration and denied the motion as moot on September 8, 2025. *Id*. at 34. Plaintiffs then chose what they call "judicious sequencing": contractual relief against Atrius in arbitration and patent claims against its resellers. *Id*.

Plaintiffs began asserting Atrius-FRS patent claims against resellers in January 2026 and sued the four ACDs on January 22 without pre-suit patent notice. ACD PI Opp. at 9, 35; Dkt. 65-1 ¶ 22; Dkt. 65-2 ¶ 18; Dkt. 65-3 ¶ 18; Dkt. 65-4 ¶ 17. They waited until May 29 to seek a preliminary injunction—more than a year after product launch and four months after suing the

ACDs. ACD PI Opp. at 8–10; Dkt. 65-14 at 1.

Atrius meanwhile sought manufacturer-level adjudication. It filed a declaratory-judgment action on February 19, later adding the ’159 Patent, and a second action concerning the ’403 Patent on May 26. Atrius PI Mot. at 9, 34–35. Plaintiffs did not assert patent-infringement counterclaims against Atrius until July 31—after the ACD opposition and one day before the Atrius PI Motion. No. 4:26-cv-00448-ALM, Dkt. 51 (E.D. Tex.). Plaintiffs created this sequence and now disparage it as “inefficient” because they changed tactics.

### B. The ACDs Opposed the PI Without Discovery, and Plaintiffs Declined to Reply

Plaintiffs filed the ACD PI Motion on May 29 and sought expedited discovery. Dkts. 38, 42. The ACDs requested reciprocal, proportionate discovery but ultimately had 28 days—including a two-week agreed extension—to analyze a motion concerning a product they do not manufacture, retain counsel and experts, and oppose it without discovery. They filed on June 26. Dkt. 65; *see also* Dkt. Ex. B at 9. The parties later reached an impasse after the ACDs proposed limited, reciprocal expert-declarant depositions. *Id*. at 9–12. Having insisted on proceeding without ACD discovery, Plaintiffs’ motion is ready for resolution. Plaintiffs’ reply was originally due July 6. At their request, the ACDs agreed to extensions, first to July 20 and then to July 27, while the parties discussed discovery and scheduling. Dkt. 69; MDL Dkt. 27. The July 23 order set July 27 for Plaintiffs’ reply and August 10 for the ACDs’ sur-reply. *Id*. Plaintiffs had the ACD opposition for 31 days, yet filed the Vacatur Motion instead of a reply.

### C. Plaintiffs’ Post-Opposition Proposals Culminated in the Vacatur Motion

After receiving the ACDs’ opposition, Plaintiffs acted promptly—but not to respond. They moved to postpone answering it by successively proposing to hold the motion in abeyance, withdraw it, and coordinate the motion with a manufacturer motion they had not yet filed. Each proposal delayed, and delayed, and delayed any resolution of their injunctive request.

On July 14, Plaintiffs asked whether the ACDs would agree to be "bound by the outcome" of a forthcoming Atrius PI Motion, offering in exchange to "hold the PI motion against Atrius resellers in abeyance." Ex. B at 9. On July 16—"[i]nstead of the proposal made Tuesday"—Plaintiffs stated that they would withdraw the ACD PI Motion "expressly in reliance on the statements made by those defendants that they have ceased selling the accused products." *Id*. at 5. The ACDs corrected that premise on July 17: no ACD had made, or was making, any commitment concerning future sales. *Id*. at 3. On July 22, Plaintiffs proposed vacating the ACD deadlines and aligning the pending motion with the still-unfiled Atrius PI Motion. Ex. A at 9–11.

Plaintiffs' final proposal was tilted sharply in their favor: the ACDs' June 26 opposition would remain operative; yet Plaintiffs could conduct broad discovery against Atrius and could use that evidence in their ACD reply, while the ACDs could only address the expanded record in sur-reply. Vacatur Mot. at 2, 5, 7; Ex. A at 5. When the ACDs declined, Plaintiffs filed the Vacatur Motion instead of a substantive reply, claiming that the two motions involved "the same product, the same patents, and virtually the same evidence." Vacatur Mot. at 1. Five days later, Plaintiffs filed the Atrius PI Motion and a separate expedited-discovery motion. Those filings confirmed that Plaintiffs seek new financial, technical, OEM, distribution, and communications evidence from Atrius before briefing closes. Atrius Disc. Mot. at 5–8; *see also* No. 4:26-cv-00448-ALM, Dkts. 56-1, 56-3, 56-4. Plaintiffs' belated tactical pivot does not constitute good cause merely because it is labeled "coordinated efficiency."

## III. THE COURT SHOULD DENY PLAINTIFFS' MOTION AND SET A HEARING ON PLAINTIFFS' ACD PI MOTION

### A. Plaintiffs Bear the Burden, and the ACD PI Motion Is Ripe for Resolution

Although styled as "vacatur" and "coordination," Plaintiffs seek to stay the ACD PI Motion while developing another proceeding. Plaintiffs invoke *Landis v. North American Co.*,

Vacatur Mot. at 5, but *Landis* places the burden on them: the movant "must make out a clear case of hardship or inequity in being required to go forward," and the court must "weigh competing interests and maintain an even balance." 299 U.S. 248, 254–55 (1936). Plaintiffs identify no hardship in litigating their motion on the record they chose. The ACDs, by contrast, face prolonged uncertainty and a one-sided expansion of that record.

Rule 6(b)(1)(A) permits an extension requested before a deadline expires for good cause. Plaintiffs' July 27 filing preserved the Court's power to extend; it did not grant relief or suspend the deadline. Because replies are optional, Plaintiffs did not default—but they elected not to file one under the agreed schedule. No surprise or external obstacle prevented a reply: Plaintiffs controlled the Atrius PI filing, knew the claimed overlap, and had the ACD opposition for 31 days. They seek time not to answer an unforeseen matter, but to develop a different record.

Local Rule CV-7(f) permits a reply responsive to the opposition and provides that "[t]he court need not wait for the reply or sur-reply before ruling on the motion." The Fifth Circuit likewise has recognized that "[d]enial of a reply brief may not raise the same concerns as denial of a response brief," particularly when the movant identifies no novel argument it could not present. *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 761 n.5 (5th Cir. 2024). Plaintiffs identify no such argument here. Instead, they seek later evidence.

Rule 6 does not require an extension merely because the request was timely. Rule 6 provides that a court "**may**, for good cause, extend the time." Fed. R. Civ. P. 6(b)(1)(A) (emphasis added). The word is permissive, and the Fifth Circuit accords district courts broad discretion in applying it. *E.g.*, *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). Here, Plaintiffs have already received two extensions. They seek another extension, not to address the ACDs' opposition, but to obtain evidence that was available when they filed their motion against the

ACDs, which they chose not to seek, and to secure it in a proceeding against Atrius, use it to backfill their record against the ACDs, and require the ACDs to engage in additional unjustified effort to defend themselves—something Plaintiffs refused to allow when requested by the ACDs. The Court may decline that request without depriving Plaintiffs of a meaningful opportunity: Plaintiffs chose not to use the opportunity they had.

Nor may a reply serve as a "do-over" motion to rebuild Plaintiffs' affirmative case against the ACDs. The Federal Circuit has held that "reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration," and that arguments not timely raised are waived "[a]s a matter of litigation fairness and procedure." *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (emphasis original). An ACD reply should answer the ACD opposition on the ACD record—not import evidence later obtained from another party for another motion.

The Court should therefore treat the ACD PI Motion as submitted and set a prompt, separate evidentiary hearing. If the Court permits a reply, it should impose guardrails: a reply due five business days after the Court's ruling; arguments confined to matters responsive to the ACDs' opposition; no reliance on Atrius discovery or submission of new declarations or materially new affirmative evidence absent leave and good cause; an ACD sur-reply within fourteen days—the period the parties negotiated, and the Court entered in its July 23 order; and a prompt, separate hearing. Ex. B at 6; MDL Dkt. 27. Those limits preserve the record on which the ACDs prepared their opposition and the ordinary allocation of burdens: Plaintiffs must establish every PI factor through the affirmative evidence submitted with their motion.

### B. Plaintiffs' Proposal Sacrifices Fairness Without Producing Efficiency

Plaintiffs assert that both motions concern the same product, patents and claims, technical record, expert analysis, claim charts, irreparable-harm evidence, and public-interest arguments—

with defendant-specific hardships as "the only point of variance." Vacatur Mot. at 6–7. The August 1 filings establish that there is some degree of overlap, but not one evidentiary record.

Both motions concern the Atrius FRS, four patents, Plaintiffs' technical expert Brian Luettke, and product-level infringement theories. But the Atrius PI Motion relies on a revised Luettke declaration, addresses three sales configurations, and adds direct-infringement allegations based on Atrius's manufacturing and OEM activities. Atrius PI Mot. at 13, 19–23. The ACD PI Motion instead places the Atrius FRS in an omnibus record involving numerous sellers and several products and configurations. *Id*. at 17–28.

The equitable records diverge further. The Atrius PI Motion alleges that Atrius undercut Plaintiffs' pricing and announced an OEM relationship for factory-equipped rifles. It separately addresses Atrius's ability to satisfy a judgment, Plaintiffs' asserted enforcement diligence, an Atrius-specific reputational-harm theory, contractual and arbitration issues, and the burdens on Atrius and three individual counterclaim defendants. Atrius PI Mot. at 23–38. In contrast, the ACD PI Motion relies on reseller-specific facts: notice, entity formation, product lines, sales status, and collectability. ACD PI Mot. at 34–39. The ACD opposition further shows that PistolCap conducted no Atrius-FRS transaction, that ProSource completed no customer sale, and that the remaining ACDs offered only standalone components that they did not design, manufacture, modify, assemble, or install. ACD PI Opp. at 1, 4; Dkt. 65-1 ¶¶ 3–6, 12–18; Dkt. 65-2 ¶¶ 10–16; Dkt. 65-3 ¶¶ 8–15; Dkt. 65-4 ¶¶ 8–14. These are different parties, conduct, financial circumstances, harms, and hardships—not merely different presentations of one record.

Plaintiffs' discovery motion is the clearest refutation. Filed five days after their "virtually the same evidence" representation, it seeks Atrius's assets, sales, forecasts, pricing, capacity, technical information, OEM relationships, and litigation communications because that information

"is not publicly available and is within Atrius Group's control." Atrius Disc. Mot. at 3, 5–8; Dkts. 56-1, 56-3, 56-4. If Plaintiffs already possess virtually the same evidence, no delay is needed; if they do not, no efficiency is gained.

The procedure is equally asymmetrical. Plaintiffs would freeze the ACD opposition, obtain new Atrius evidence, and select what to deploy in reply. Their proposed cure—allowing the ACDs to raise "new points of their own choosing" in sur-reply—confirms the defect. Vacatur Mot. at 2. A sur-reply does not replace an opposition to a completed affirmative record. Plaintiffs offer no renewed opposition, defined ACD discovery rights, or orderly procedure to test imported evidence.

Prompt adjudication better serves judicial economy. A ruling on common product-level issues may narrow the Atrius disputes; Atrius-specific questions can be resolved on the Atrius record. That sequence captures genuine overlap without blending distinct evidence and equities. Efficiency does not entitle Plaintiffs to suspend the first motion after seeing the opposition so they can answer it with evidence developed against different parties.

### C. Plaintiffs' Strategic Sequencing and Delay Defeat Good Cause

Plaintiffs' own Atrius PI Motion supplies their anticipated explanations. **First**, they say patent enforcement was barred until May 2025. Atrius PI Mot. at 33. But the Atrius FRS launched as that supposed bar lifted, and the '247 and '784 Patents were then available for enforcement. *Id*. at 33–34. Plaintiffs nevertheless chose to pursue contractual litigation against Atrius and, later, patent litigation against its resellers. **Second**, Plaintiffs say arbitration offered potentially complete contractual relief against Atrius. *Id.* at 34. That may explain why Plaintiffs preferred arbitration; it does not establish that arbitration barred patent claims. Plaintiffs clearly believed that suing in federal district court was worth doing; after all, they have asserted their patents against Atrius's customers in numerous courts nationwide while arbitration continued. And once Atrius filed its February and May declaratory-judgment actions, Plaintiffs had ready vehicles for manufacturer-

level patent adjudication. Yet they showed no corresponding urgency, instead waiting until July 31 to assert infringement counterclaims. **Third**, Plaintiffs blame centralization uncertainty because Atrius contested transfer through July. *Id.* at 35. But venue uncertainty did not prevent counterclaims wherever the Atrius actions were pending, infringement actions elsewhere, an ACD reply, or a hearing request here. These circumstances explain litigation preferences, not an external obstacle or good cause.

The Declaratory Judgment Act exists to dispel patent-created uncertainty affecting manufacturers and customers. Patent holders historically used "scare-the-customer-and-run tactics that infect[ed] the competitive environment of the business community with uncertainty and insecurity." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). The analogy is limited but apt: Plaintiffs brandished their patents by suing Atrius's customers, enticed the manufacturer suits, kept the manufacturer actions at bay until after those customers presented rebuttal arguments to Plaintiffs' technical theories, and then invoked the manufacturer proceedings to postpone the earlier customer cases.

*Monolithic Power Systems, Inc. v. O2 Micro International Ltd.* illustrates that customer-first litigation followed by retreat may bear on a patentee's overall strategy. There, the Federal Circuit affirmed a finding of an "overall vexatious litigation strategy" where a patentee repeatedly sued the manufacturer's customers, prompting declaratory-judgment actions, and then withdrew its claims "after substantial litigation had taken place." 726 F.3d 1359, 1367 (Fed. Cir. 2013). While *Monolithic Power* arose at the fee stage, and the ACDs do not seek an exceptional-case finding here, the narrower point is that customer-first litigation is not inherently efficient and that an effort to retreat only after the customers have performed substantial defense work may bear on whether later "coordination" promotes efficiency or merely preserves tactical leverage. That

concern is concrete here. Plaintiffs required the ACDs to oppose an emergency motion on an expedited, no-discovery record. After receiving that opposition, Plaintiffs proposed a conditional withdrawal based on a factual premise the ACDs promptly disputed. Ex. B at 3, 5. Plaintiffs then shifted their affirmative focus to Atrius and now seek to keep the customer motion pending while they develop a fuller manufacturer record. That sequence does not promote efficiency; it preserves the burdens and leverage of the customer motion while postponing its adjudication.

Plaintiffs' proposed timetable further contradicts their professed urgency. They insist that "[e]very week these motions remain undecided is a week the accused product remains on the market." Vacatur Mot. at 8. Yet after three weeks of extensions and no reply by July 27, their proposal leaves briefing open until at least October 17—eleven weeks after August 1—with a later hearing. *Id.* at 4–5; Atrius PI Mot. at 2–3. The schedule provides discovery responses through August 22, up to 14 more days for depositions, and then three successive 14-day periods for opposition, reply, and sur-reply. Any discovery dispute adds delay. That is not a "short, defined delay." Vacatur Mot. at 8.

Delay bears on irreparable harm. *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). It bears here on good cause as well, for the same reason: "Absent a good explanation, a substantial period of delay militates against the issuance of a [PI] by demonstrating that there is no apparent urgency to the request for injunctive relief." *GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006). Plaintiffs waited more than a year after product launch before seeking any preliminary injunction concerning the Atrius FRS, and more than fourteen months before seeking one against Atrius itself—more than six months after they sued the ACDs. They now request at least eleven more weeks before briefing closes. ACD PI Opp. at 8–10; Dkt. 65-14 at 1. Their conduct speaks more clearly than their rhetoric.

*Alexander v. Primerica Holdings, Inc.* is particularly instructive. There, plaintiffs who had emphasized an "urgent need" for preliminary relief later withdrew their motion and sought substantial delay. The court found that they had "lost their sense of urgency and seek to delay a resolution of this case substantially and indefinitely," and that the contradiction "raise[d] serious doubts as to Plaintiffs' motives." 822 F. Supp. 1099, 1119 (D.N.J. 1993). Plaintiffs' conduct here presents the same contradiction: their rhetoric demands immediate relief, but their requested procedure postpones adjudication to allow them to develop a different record. The totality—customer suits before manufacturer patent claims, an ACD PI before an Atrius PI, three weeks of extensions, no July 27 reply, and a later manufacturer record offered as the reason for further delay—shows strategic sequencing, not good cause. Denial does not impair Plaintiffs' Atrius PI Motion but would hold Plaintiffs to the sequence and records they chose. Plaintiffs should not be permitted to hit a reset button under the guise of coordination.

### D. The Same Asymmetry Would Prejudice the ACDs and Distort Their Record

The same procedural asymmetry would concretely prejudice the ACDs. Plaintiffs say coordination changes "only one thing" for the ACDs: timing. Vacatur Mot. at 7. But timing matters when Plaintiffs have invoked extraordinary relief against small retailers and now propose to leave that request unresolved for at least eleven additional weeks. The ACDs, which are small businesses, must make vital commercial decisions while a request to enjoin their sales remains pending. Their declarations also identify customer, supplier, operational, and reputational consequences extending beyond the immediate margin on the Atrius FRS. Dkt. 65-1 ¶¶ 20–21; Dkt. 65-2 ¶ 17; Dkt. 65-3 ¶¶ 16–17; Dkt. 65-4 ¶¶ 15–16.

The clearest prejudice is procedural. Plaintiffs would freeze the ACDs' evidence, develop Atrius financial, technical, OEM, distribution, and communications evidence after seeing the ACD defenses, and deploy selected portions in reply. The ACDs would receive only a reactive sur-reply,

without renewed opposition. Their lack of discovery burden is no benefit when Plaintiffs alone may expand their affirmative case. Participation in Atrius discovery is no substitute because that discovery targets Atrius and materially different Atrius-specific issues.

A prompt, separate hearing would avoid that asymmetry and test the record the parties submitted. Plaintiffs chose the declarations and arguments supporting their May 29 ACD PI Motion; the ACDs answered them. The Court need not wait for a different case against different parties. The ACDs are not placeholders in a later manufacturer dispute. They are the parties against whom Plaintiffs first sought extraordinary relief and should receive prompt adjudication. Plaintiffs' proposal is not neutral coordination. They did not first develop a manufacturer record and then seek consistent treatment of the customer claims. Rather, they required the ACDs to oppose a PI on a compressed, no-discovery record; reviewed that opposition; filed a broader affirmative case against Atrius; and then asked the Court to subordinate the customer proceeding to the later manufacturer case. Plaintiffs' own later-filed manufacturer motion cannot justify postponing the customer motion they chose to file first.

### E. The Court Should Set a Prompt, Separate Hearing on the ACD PI Motion

Plaintiffs themselves have placed the hearing question before the Court. Their Motion asks the Court to "set a hearing on the two preliminary injunction motions at the earliest available date," and their proposed order directs "a single hearing" on both. Vacatur Mot. at 8, Proposed Order. The ACDs agree that a hearing should be set—but promptly and separately on the motion already ripe for adjudication: the ACD PI Motion. By Plaintiffs' own account, nothing remains to be done before that motion can be heard. It has been pending since May 29, and the ACDs' opposition has been on file since June 26. Plaintiffs elected not to file their reply by July 27. They seek no interrogatories, document requests, or deposition testimony from any ACD. Vacatur Mot. at 2, 7. And they proposed making their expert declarants "available for questioning at the hearing" rather

than deposing them beforehand. Ex. A at 5. Thus, the ACD PI Motion requires no discovery from the ACDs or expert depositions before it can be heard. Any asserted need for further evidence arises solely from Plaintiffs' desire to import a later-developed Atrius record. Nor is readiness the issue. On July 24—before the Atrius PI Motion existed—Plaintiffs stated that they "will be ready for [a hearing] immediately after sur-replies." *Id*. Had Plaintiffs replied on July 27, the ACDs' sur-reply would have been due August 10. Even if Plaintiffs meant "ready" for a combined hearing, the statement confirms no hearing-specific impediment. A preference for a later manufacturer record does not justify postponing a motion that has been ripe since June.

A separate setting is also necessary to preserve the distinct ACD record. Plaintiffs concede that defendant-specific hardships are the point on which the motions diverge. Vacatur Mot. at 7. The ACDs' opposition rests on reseller-specific facts—including notice, product lines, sales status, and the absence of design, manufacture, or assembly by these retailers. ACD PI Opp. at 1, 4. A combined hearing would risk obscuring those issues beneath a materially different manufacturer record that the ACDs neither developed nor had an opportunity to test. Accordingly, the ACDs request a prompt, separate evidentiary hearing on the existing documentary record, with live examination limited to the parties' existing declarants and experts. No new witnesses or materially new affirmative evidence should be permitted absent leave and good cause.

## IV. CONCLUSION

The ACDs respectfully request that the Court: (1) deny the Vacatur Motion; (2) treat the ACD PI Motion as submitted on the existing record; and (3) set a prompt, separate evidentiary hearing on the ACD PI Motion at the Court's earliest convenience. Alternatively, if Plaintiffs choose to withdraw the ACD PI motion in favor of pursuing injunctive relief against Atrius, Plaintiffs should be ordered to pay the ACDs' reasonable attorney's fees and costs spent in responding to the motion Plaintiffs now seek to abandon.

Dated: August 7, 2026

Respectfully submitted,

*/s/ Brandon Merrill*
Robert Manley
Texas Bar No. 787955
Christian Hurt
Texas Bar No. 24059987
Edward K. Chin
Texas State Bar No. 50511688
Scott W. Hejny
Texas Bar No. 24038952
Brandon Merrill
Texas Bar No. 24144769
RManley@McKoolSmith.com
CHurt@McKoolSmith.com
EChin@McKoolSmith.com
SHejny@McKoolSmith.com
BMerrill@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Adam V. Floyd
Texas Bar No. 00790699
AFloyd@FloydIP.com

**FLOYD IP**
3203 Bluffs Lane
Parker, Texas 75002
Tel: (512) 497-7500

Conor M. Civins
Texas Bar No. 24040693
Michael Chibib
Texas Bar No. 00793497
Conor.Civins@Bracewell.com
Michael.Chibib@Bracewell.com

**BRACEWELL LLP**
111 Congress Ave., Suite 2300
Austin, TX 78701
Telephone: (512) 472-7800

**Counsel for Atrius Customer Defendants**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 7, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Brandon Merrill*
Brandon Merrill